# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

District Court Case Number CV 09-05045-MMM

## GINGER ROOT OFFICE ASSOCIATES, LLC
*Defendant - Appellant,*

*vs.*

## DAVID Y. FARMER, CHAPTER 7 TRUSTEE
*Plaintiff - Respondent.*

On Appeal from Summary Judgment, of the
United States Bankruptcy Court
For the Central District of California

## BRIEF OF APPELLANT

COX, CASTLE & NICHOLSON LLP
Preston W. Brooks (State Bar No. 152439)
Susan S. Davis (State Bar No. 125854)
2049 Century Park East, 28th Floor
Los Angeles, CA  90067-3284
Telephone:  (310) 277-4222
Facsimile:  (310) 277-7889
Attorneys for Appellant
GINGER ROOT OFFICE ASSOCIATES, LLC

# TABLE OF CONTENTS

I.    STATEMENT OF JURISDICTION ............................................... 1

II.   STATEMENT OF ISSUES ON APPEAL ................................... 1

III.  STANDARD OF REVIEW.......................................................... 2

IV.  STATEMENT OF THE CASE ................................................... 3

V.   STATEMENT OF FACTS ........................................................... 5

     A.    THE CONTAMINATION OF THE PROPERTY. ........................ 5

     B.    GINGER ROOT'S DAMAGES ....................................... 7

     C.    GINGER ROOT'S CLAIMS AGAINST PJHB IN THE STATE COURT ACTION................................................ 9

     D.    GINGER ROOT'S CLAIMS AGAINST PJHB IN THE FEDERAL COURT ACTION. ................................... 10

VI.  ARGUMENT.......................................................................... 11

     A.    INTRODUCTION AND SUMMARY OF ARGUMENT ............ 11

     B.    THE DIFFERENCE BETWEEN GENERAL AND SPECIAL ALTER EGO CLAIMS................................................ 12

     C.    GINGER ROOT'S ALTER EGO CLAIMS ARE SPECIAL AND ARE NOT PROPERTY OF APP'S BANKRUPTCY ESTATE.

     D.    THE COMPLAINTS SUFFICIENTLY ALLEGE PJHB'S PARTICIPATION IN THE CONTAMINATION OF THE PROPERTY.

     E.    THE BANKRUPTCY COURT MISCONSTRUED THE FUNCTION OF THE COMPLAINTS. .......................................... 22

VII. CONCLUSION ..................................................................... 23

i

# TABLE OF AUTHORITIES

## Cases

*American Civil Liberties Union of Nev. V. City of Las Vegas*,
333 F.3d 1092 (9th Cir. 2003),
cert. den., 540 U.S. 1110, 124 S.Ct. 1077 (2004) ................................2

*Bennett v. Schmidt*,
153 F.3d 516 (7th Cir. 1998) ........................................................22

*Careau & Co. v. Security Pac. Business Credit, Inc.*,
222 Cal.App.3d 1371 (1990) ........................................................22

*Doe v. City of Los Angeles*,
42 Cal.4th 531 (2007) ...............................................................22

*Fisher v. Apostolou*,
155 F.3d 876 (7th Cir. 1998) ......................................................14

*In re Davey Roofing, Inc.*,
167 B.R. 604 (Bankr. C.D. Cal. 1994) .............................. 12, 14, 16, 18

*In re Folks*,
211 B.R. 378, 387 (9th Cir. BAP 1997) ........................ 12, 14, 15, 16, 18

*In re New England Fish Co.*,
749 F.2d 1277, 1280 (9th Cir. 1984) ................................................2

*Kalb, Voorhis & Co. v. American Financial Corp.*,
8 F.3d 130 (2nd Cir. 1993) ......................................................12, 13

*Koch Refining v. Farmers Union Cent. Exch.*,
831 F.2d 1339, 1350 (7th Cir. 1987),
cert. denied 485 U.S. 906, 108 S. Ct. 1077, 99 L.Ed.2d (1988) ...............13, 18

*Lovell v. Chandler*,
303 F.3d 1039 (9th Cir. 2002) .......................................................2

*Padfield v. AIG Life Ins. Co.*,
290 F.3d 1121, (9th Cir. 2002),
cert. den., 537 U.S. 1105, 123 S.Ct. 871 (2003) ...................................2

*Self Directed Placement Corp. v. Control Data Corp.*,
908 F.2d 462 (9th Cir. 1990) .......................................................22

*Stodd v. Goldberger*,
73 Cal.App.3d 827 (1977) .............................................. 13, 14, 16, 18

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506, 122 S.Ct. 992, 998 (2002) ..........................................22

*Variable-Parameter Fixture Development Corporation v. Morpheus Lights, Inc.*,
945 F.Supp. 603 (S.D.N.Y. 1996) ..................................... 14, 15, 19, 21

*Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*,
305 F.3d 913, 916 (9th Cir. 2002),

cert. den., 538 U.S. 1000, 123 S.Ct. 1910 (2003), subsequent remand, 419 F.3d 933 (9th Cir. 2005) ..................................................................................................2

**Statutes**

11 U.S.C. § 727(a)(2)................................................................................................15
28 U.S.C. § 1334(b)...................................................................................................1
28 U.S.C. § 157(b)(1)................................................................................................1
28 U.S.C. § 157(b)(2)(A)...........................................................................................3
28 U.S.C. § 157(b)(2)(O)...........................................................................................3
28 U.S.C. § 158(a)......................................................................................................1
42 U.S.C. § 9601(14)..................................................................................................5
Cal. Civ. Proc. Code § 425.10 ................................................................................22
California Health and Safety Code § 25363 ...........................................................10
CERCLA § 107.........................................................................................................10
Rule 8002(a) of the Federal Rules of Bankruptcy Procedure..................................1

## I.

## **STATEMENT OF JURISDICTION**

This appeal arises out of the Summary Judgment (the "Judgment") of the United States Bankruptcy Court, Central District of California, Northern Division (the "Bankruptcy Court"), the Honorable Robin Riblett presiding. The Bankruptcy Court had subject matter jurisdiction over the matters pertaining to this appeal, which arose from an adversary proceeding, pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b) (1) as a proceeding relating to a case under title 11. The subject matter jurisdiction of the United States District Court (the "Court") is provided in 28 U.S.C. § 158(a).

The Judgment was entered by the Bankruptcy Court on June 26, 2009. (Appellant's Appendix ("AA"), 336-338 [Judgment].) The Notice of Appeal was filed on July 2, 2009, which was within the 10-day period to file a notice of appeal provided by Rule 8002(a) of the Federal Rules of Bankruptcy Procedure. (AA, 339-344].)

## II.

## **STATEMENT OF ISSUES ON APPEAL**

1.    Whether the bankruptcy court erred in holding that the particularized alter ego claims asserted by Defendant-Appellant Ginger Root Office Associates, LLC ("Ginger Root") in the action pending in the United States District Court for the Central District of California, Case No. CV07-05568 (MMM) (CTx), which are based on facts specific to Ginger Root, are generalized alter ego claims that are property of the bankruptcy estate of debtor Advanced Packaging & Products Company ("APP").

2.    Whether the bankruptcy court erred in finding that the particularized alter ego claims asserted by Ginger Root in the action pending in the Superior Court of California, County of Los Angeles, as Case No. YC052715, which are

1

based on facts specific to Ginger Root, are generalized alter ego claims that are property of the bankruptcy estate of APP.

## III.

## STANDARD OF REVIEW

An order granting or denying summary judgment is reviewed *de novo*. *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (order granting summary judgment reviewed *de novo*); *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1124 (9th Cir. 2002), cert. den., 537 U.S. 1105, 123 S.Ct. 871 (2003) (order denying summary judgment, when coupled with an order granting summary judgment, is reviewed *de novo*). Under the *de novo* standard of review, the appellate court is free to disregard the reasoning and determination of the lower court as if no decision had been rendered. *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir. 1984).

In reviewing rulings on cross-motions for summary judgment, the appellate court evaluates each motion separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences". *American Civil Liberties Union of Nev. V. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003), cert. den., 540 U.S. 1110, 124 S.Ct. 1077 (2004).

The reviewing court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the lower court correctly applied the relevant substantive law. *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 916 (9th Cir. 2002), cert. den., 538 U.S. 1000, 123 S.Ct. 1910 (2003), subsequent remand, 419 F.3d 933 (9th Cir. 2005).

## IV.

## **STATEMENT OF THE CASE**

On June 18, 2008, APP filed its voluntary chapter 7 case, Case No. 08-11392, which is pending in the Bankruptcy Court.   (AA, 30:9-10 [Sholder Declaration, ¶ 3].)  Plaintiff-Appellee David Y. Farmer ("Trustee") is the Chapter 7 Trustee in APP's bankruptcy case.  (AA, 30:10-11 [Sholder Declaration, ¶ 3].)

On February 3, 2009, the Trustee commenced an adversary proceeding against Ginger Root in the Bankruptcy Court, Adversary No. 09-01021 (the "Adversary Action"), by filing a complaint for declaratory relief seeking a determination that certain alter ego claims (the "Alter Ego Claims") asserted by Ginger Root against PJH Brands, Inc. ("PJHB") in pending federal and state court actions were property of APP's bankruptcy estate.  (AA, 8-14 [Complaint].)  The Trustee filed the complaint to obtain a determination by the Bankruptcy Court that the Alter Ego Claims were property of APP's bankruptcy estate as a condition to an agreement between the Trustee and PJHB to sell the Alter Ego Claims to PJHB. (AA, 355:10-21 [June 26, 2009 Transcript].)

On February 26, 2009, even before the deadline for Ginger Root to answer the complaint, the Trustee filed a Motion for Summary Judgment, together with a Proposed Statement of Uncontroverted Facts and Conclusions of Law in support of the motion.  (AA, 19-79 [Trustee's Motion, Proposed Statement].)

On March 12, 2009, Ginger Root filed its answer to the complaint, denying among other things that the adversary action was a core proceeding under 28 U.S.C. U.S.C. §§ 157(b)(2)(A) and (O) and objecting to entry of a final order or judgment by the Bankruptcy Court. (AA, 84-91 [Answer].)

On March 23, 2009, Ginger Root filed its opposition to the Trustee's summary judgment motion, together with Ginger Root's response to the Trustee's separate statement of uncontroverted facts and conclusions of law and supporting

3

declarations.  (AA, 92-200 [Ginger Root's Opposition, Declarations, Response to Proposed Statement].)

On March 30, 2009, Ginger Root filed its Cross-Motion for Summary Judgment, together with supporting declarations and its Proposed Statement of Uncontroverted Facts and Conclusions of Law.  (AA, 204-306 [Ginger Root's Motion, Declarations, Proposed Statement].)

On April 2, 2009, the Trustee filed a reply to Ginger Root's opposition to the Trustee's summary judgment motion.  (AA, 307-315 [Trustee's Reply].)

On April 2, 2009, the Bankruptcy Court signed an order approving a stipulation between the Trustee and Ginger Root to continue the briefing deadlines for the Trustee's opposition and Ginger Root's reply to Ginger Root's summary judgment motion.  (AA, 316-319 [Order].)

On May 28, 2009, the Trustee filed his opposition to Ginger Root's summary judgment motion and a statement of genuine issues, in which the Trustee did not controvert any of facts in Ginger Root's separate statement of facts.  (AA, 320-328 [Trustee's Opposition, Statement].)

On June 12, 2009, Ginger Root filed its reply to the Trustee's opposition to Ginger Root's summary judgment motion.  (AA, 329-335 [Ginger Root's Reply].)

On June 26, 2009, the Bankruptcy Court held a hearing on both summary judgment motions after which the Bankruptcy Court entered the Judgment in favor of the Trustee and against Ginger Root in the Adversary Action.  (AA, 336-338 [Judgment], AA, 352-371 [June 26, 2009 Transcript].)  The Judgment held that the Alter Ego Claims asserted by Ginger Root against PJHB in the pending state and federal court actions were property of the chapter 7 estate of debtor APP.  (AA, 337:7-15 [Judgment].)

On July 2, 2009, Ginger Root filed a Notice of Appeal from the Judgment (the "Appeal") with the Bankruptcy Court, a Statement of Election to proceed with

4

the appeal in this Court and a Notice of Related Case as to Ginger Root's federal case currently pending in this Court.  (AA, 339-348 [Notice of Appeal, Statement of Election, Statement of Related Case].)  The Appeal was transferred to this Court and is pending as Case No. 2:09-cv-05045-MMM.  (AA 349-351.)

## V.

## STATEMENT OF FACTS

For purposes of this appeal, none of the following facts are in dispute as the Trustee admitted all such facts for purposes of Ginger Root's Cross-Motion for Summary Judgment.  (AA, 326:8-11.)  Ginger Root asserted the same facts, supported by the declarations from the same declarants, Keith B. Walker and Allison M. Lynch in its opposition to the Trustee's Motion for Summary Judgment.  (AA, 111-200 [Ginger Root's Declarations, Proposed Statement].)  For the sake of brevity, Ginger Root has not included parallel cites to those declarations.

A.      **The Contamination of the Property.**

APP leased a property located at 16131 South Maple Avenue, Gardena, California (the "Property") from Ginger Root.  (AA, 271:18-272:8 [Lynch Declaration, ¶¶5-8].)  APP conducted its business operations at the Property, which consisted of manufacturing, assembling, packaging, mixing, distributing, and storage of paint, paint supplies, aerosol, and related materials.  *Id.*

While APP leased the Property, certain hazardous substances, as defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") [42 U.S.C. § 9601(14)], were stored and handled at the Property.  (AA, 271:9-11 [Lynch Declaration, ¶ 9].)  During that same period of time, at least one, if not more, releases of hazardous substances occurred at the Property.  (AA, 272:12-13 [Lynch Declaration, ¶ 10].)  Under the terms of its lease with Ginger Root, APP was liable for all hazardous substances released by its

5

operations as well as those of its predecessors.  (AA, 271:27-272:8 [Lynch Declaration, ¶ 8].)

Investigations performed during the period of the lease revealed elevated levels of hazardous substances in the soil and groundwater at the Property.  (AA, 272:14-17 [Lynch Declaration, ¶ 11].)  In addition, certain hazardous substances, including without limitation, toluene, naphthalene and methylene chloride, migrated off the Property to neighboring properties.  (AA, 272:17-19 [Lynch Declaration, ¶ 11].)  The presence of hazardous substances in soil and groundwater at the Property and in groundwater migrating from the Property are referred to herein as the "Contamination."

On January 9, 2006, a fire occurred at the Property and an industrial propane cylinder in the storage yard exploded.  (AA, 273:3-4 [Lynch Declaration, ¶ 14].)  As a result, a large number of barrels and other hazardous materials storage containers were destroyed or damaged, hazardous materials were released in the storage yard and the side of the warehouse, and runoff from fire suppression activities flowed from the Property onto adjacent properties.  (AA, 273:5-8 [Lynch Declaration, ¶ 15].)  In addition, one of APP's employees at the Property was killed and two others were critically injured.  (AA, 273:9-10 [Lynch Declaration, ¶ 16].)

Following extensive hazardous material removal activities, on November 18, 2006, the United States Environmental Protection Agency ("EPA") issued a letter stating that the removal of hazardous materials from the Property was complete.  (AA, 273:18-21 [Lynch Declaration, ¶ 18 and Ex. 2].)  The EPA letter addressed only the above-ground contamination.  *Id.*  The EPA found that the above-ground contamination and the below-ground contamination were two discrete areas of contamination that were not connected in any way.  (AA, 273:22-26 [Lynch Dec., ¶ 19 and Ex. 3.  In addition, the contaminants released as a result of the fire and

6

explosions are predominantly different from those released from the tanks and other equipment. *Id.* The EPA issued a closure letter dated February 27, 2008, solely as to the above-ground contamination. *Id.*

In 2006, Ginger Root retained an environmental consultant, SECOR International, Inc. ("SECOR"; now Stantec Consulting Corporation) to perform various investigations in connection with the Contamination. (AA, 274:1-3 [Lynch Declaration, ¶ 20].) At the request of the California Regional Water Quality Control Board, Los Angeles Region ("RWQCB"), in April 2007 Ginger Root sampled groundwater from several monitoring wells both on and off the Property. (AA, 274:4-7 [Lynch Declaration, ¶ 21].) SECOR was engaged to perform this work on behalf of Ginger Root. *Id.* The results of the groundwater monitoring event showed, among other things, continued elevated levels of hazardous substances in soil, soil gas, and/or groundwater. (AA, 274:8-9 [Lynch Declaration, ¶ 22].) The RWQCB continues to exercise jurisdiction over the Contamination at the Property. (AA, 274:10-11 [Lynch Declaration, ¶ 23].)

**B.    Ginger Root's Damages.**

As a result of the contamination of the Property, Ginger Root suffered and continues to suffer the following damages:

1.    The Property is contaminated with hazardous substances, thereby diminishing the value of the Property, precluding Ginger Root from utilizing the Property for business purposes, precluding Ginger Root from selling or leasing the Property for its otherwise full fair market value, and precluding Ginger Root from using the Property in its highest and best economic use. (AA, 274:14-18 [Lynch Declaration, ¶ 24.a.].)

2.    The contamination has created a liability on the part of Ginger Root pursuant to CERCLA and other environmental statutes, regulations, and ordinances, subjecting Ginger Root to related costs for, remediation, clean-up,

7

monitoring, and any fines and penalties relating thereto for the Property and adjacent properties, including without limitation, the requirements imposed by the California Regional Water Quality Control Board, as the regulatory agency with oversight regarding the soil and ground water contamination at the Property. These requirements include (a) performing further subsurface investigations of soil, soil vapor and groundwater; (b) performing quarterly groundwater monitoring; (c) performing soil and groundwater remediation to address the impacts; (d) performing post-remediation rebound and/or confirmation sampling to confirm the effectiveness, and completion, of any remedial work required by the Regional Board; (e) abandoning groundwater monitoring wells; and (f) paying the expenses relating to the Regional Board's oversight with respect to the Property. (AA, 274:19-275:3 [Lynch Declaration, ¶ 24.b].)

       3.    As a result of the January 9, 2006 fire, the Property and structures, improvements, soils and other elements at the Property were damaged or destroyed. Ginger Root incurred damages resulting from the repair of the Property, including (a) repairing the building (including without limitation the roof and the burned interior portions of the property, which necessitated extensive renovation work) to bring it into rentable condition; (b) removing all debris and other items damaged and burned by the fire; and (c) re-paving areas outside the building that were damaged by the actions necessary for obtaining closure from EPA (i.e. the scraping of chemical-impacted asphalt and concrete). (AA, 275:4-11 [Lynch Declaration, ¶ 25].)

       4.    Ginger Root incurred damages resulting from APP's breach of the Lease, including without limitation APP's (a) failure to pay rent to Ginger Root and (b) failure to pay property taxes. (AA, 275:12-14 [Lynch Declaration, ¶ 26].)

5.      Ginger Root faces potential liability for claims relating to the death and injuries to APP employees present on the Property and killed and injured as a result of the explosion and fire.  (AA, 275:15-16 [Lynch Declaration, ¶ 27].)

6.      Ginger Root faces potential liability for the claims of entities that responded to the contamination caused by the fire and explosion at the Property.  (AA, 275:17-18 [Lynch Declaration, ¶ 28].)

**C.     Ginger Root's Claims against PJHB in the State Court Action.**

As a result of damages resulting from the fire at the Property, Ginger Root filed a cross-complaint in the Los Angeles Superior Court as case number YC052715 (the "State Court Action") against the following defendants:  APP, PJHB, PJH Brands, Inc. an Arizona corporation, and Steven Joseph Renshaw aka Steve Renshaw, an individual.  (AA, 223:11-17, 228-253 [Walker Declaration, ¶ 4 and Ex. 1].)  The only defendants remaining in the State Court Action are APP and PJHB.  (AA, 223:18 [Walker Declaration, ¶ 5].)  The State Court Action is based on the above-ground (surface and shallow soil) contamination and other damages resulting from the fire and explosions that all occurred on one day (January 9, 2006).  (AA, 223:19-21 [Walker Declaration, ¶ 6].)

Several causes of action in the State Court Action have settled or been dismissed.  (AA, 223:22-224:2 [Walker Declaration, ¶¶ 7-10].)  The following causes of action remain against APP and PJHB, individually and as an alter ego of APP:

**Ninth Cause of Action:**  Negligence against APP and PJHB based on the January 9, 2006 explosion and fire at the Property.  Ginger Root asserts damages based on the diminished value of the Property, potential indemnity claims relating to the death and injuries to APP employees as a result of the explosion and fire, liability under CERCLA, liability to the EPA, and liability to adjacent property owners.  (AA, 224:5-8 [Walker Declaration, ¶ 11].)

9

**Tenth Cause of Action:**  Breach of Contract based on APP's and PJHB's failure comply with their environmental obligations under the Lease.  (AA, 224:8-10 [Walker Declaration, ¶ 11].)

**Eleventh Cause of Action:**  Nuisance based APP's and PJHB's failure to remediate the contamination at the Property resulting from the fire and explosion. (AA, 224:10-11 [Walker Declaration, ¶ 11].)

**Twelfth, Thirteenth and Fourteenth Causes of Action:**  Declaratory relief seeking a declaration that APP and PJHB have an obligation under the Lease to provide defense and indemnity to Ginger Root.  (AA, 224:11-13 [Walker Declaration, ¶ 11].)

**D.**    **Ginger Root's Claims Against PJHB in the Federal Court Action.**

As a result of damages from the below ground contamination at the Property, Ginger Root filed a complaint in the United States District Court for the Central District of California, case number CV07-05568 (MMM) (PJWx) (the "Federal Court Action"), against the following defendants:  APP, PJHB and Steven Joseph Renshaw, which is currently pending as case number CV07-05568 (MMM) (CTx).  (AA, 224:16-21, 255-269 [Walker Declaration, ¶ 13 and Ex. 2].)  The only remaining defendants in the Federal Court Action are APP and PJHB.  (AA, 224:22 [Walker Declaration, ¶ 14].)  The Federal Court Action is based on the below ground (deep contamination of soil and groundwater) caused by releases of hazardous substances from, among other things, underground and above-ground tanks, occurring over the course of a decade, and prior to the January 9, 2006 fire. (AA, 224:23-26 [Walker Declaration, ¶ 15 and Ex. 2].)

The Federal Court Action alleges claims for relief for a CERCLA § 107 claim, declaratory relief (CERCLA), a California Health and Safety Code § 25363 claim, breach of contract, negligence, continuing nuisance and continuing trespass. (AA, 156:27-157:1, 255-269 [Walker Declaration, ¶ 16 and Ex. 2].)  The following

10

claims for relief are pending against APP and PJHB, individually and as APP's alter ego, at trial:

**Claim 1:**  Cost Recovery claim under section 107 of CERCLA ("CERCLA § 107 Claim").  Ginger Root contends that the evidence will show that PJHB is liable under CERCLA for actively participating in the acts and releases of hazardous substances caused by APP.  (AA, 225:3-9 [Walker Declaration, ¶ 17].)

**Claim 2:**  Breach of the Lease between APP and Ginger Root, based on the contamination of the property.  Ginger Root contends that the evidence will show the PJHB is liable for the contamination caused by APP's operations and any contamination that pre-dates APP's tenancy at the Property by actively participating in the acts and releases of hazardous substances caused by APP. (AA, 225:9-13 [Walker Declaration, ¶ 17].)

**Claim 3:**  Continuing Public Nuisance, based on the contamination of the Property.  Ginger Root contends that the evidence will show the PJHB is liable for the contamination caused by APP's operations and any contamination that pre-dates APP's tenancy at the Property by participating in the acts and releases of hazardous substances caused by APP.   (AA, 225:13-16 [Walker Declaration, ¶ 17].)

## VI.

## ARGUMENT

### A.   Introduction and Summary of Argument.

The crux of this appeal is whether the Alter Ego Claims alleged by Ginger Root against PJHB, which are based on PJHB's active participation in causing the injuries suffered only by Ginger Root, are property of APP's bankruptcy estate.  To make that determination, this Court must look at California law, which recognizes two types of alter ego claims - generalized alter ego claims and special or particularized alter ego claims.  In determining whether an alter ego claim is

11

general or particularized, California law requires the Court to look not only at the alter ego claims, but also at the injury or basis for the alter ego claims.

Here, the Bankruptcy Court did not consider the basis for Ginger Root's Alter Ego Claims, which arise from PJHB's active participation in causing the contamination of the Property. (AA, 365:21-366:2 [June 26, 2009 Transcript].) The Bankruptcy Court also disregarded allegations in the complaints that both APP and PJHB participated in the contamination of the Property. (AA, 366:3-368:1). Instead, the Bankruptcy Court held that the Alter Ego Claims in both actions were generalized alter ego allegations that were property of APP's bankruptcy estate based on the boilerplate alter ego allegations in the state court complaint and Ginger Root's alleged failure to specifically allege that PJHB directly participated in the Contamination. (AA, 367:2-9, 368:9-20.) The Bankruptcy Court's decision was wrong as a matter of law and should be reversed.

**B.**     **The Difference Between General and Special Alter Ego Claims.**

The determination as to whether the Alter Ego Claims belong to Ginger Root or APP is a question of California law. *See Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 131 (2nd Cir. 1993) (whether rights belong to the debtor or the individual creditors is a question of state law). California law recognizes two types of alter ego claims: (i) general alter ego claims alleging injury to the corporation generally and all its creditors, and (ii) special or particularized alter ego claims that belong to each creditor individually. *In re Davey Roofing, Inc.*, 167 B.R. 604, 608 (Bankr. C.D. Cal. 1994). "To determine whether the action is personalized to [plaintiffs] or accrues generally to [the debtor's estate], the court must look to the alter ego claim and the injury for which relief is sought." *In re Folks*, 211 B.R. 378, 387 (9th Cir. BAP 1997).

General alter ego claims belong to the debtor-corporation and therefore, only the trustee of the bankruptcy estate can assert these claims, because the estate has

an interest in such claims. *Id.* A claim is considered general if "the claim could have been brought by any creditor of the debtor." *Kalb, Voorhis & Co. v. American Financial Corporation*, 8 F.3d 130, 132-133 (2nd Cir. 1993) (finding alter ego claims that were not directed at the creditor specifically and harmed all creditors equally were property of the bankruptcy estate).

Special alter ego claims belong to individual creditors and can be asserted only by such creditors. *Id.* A claim is considered special, belonging only to the creditor and not to the bankruptcy estate, where an alter ego claim alleges injury only to an individual creditor and does not allege injury to the corporation. *Stodd v. Goldberger*, 73 Cal.App.3d 827, 833 (1977) (the court dismissed the trustee's complaint to pierce the corporate veil because the trustee failed to allege injury to the corporation).

While courts use the word "injury" in differentiating between general and special alter ego claims, that word is not entirely accurate and leads to somewhat confusing discussions in the cases addressing the issue. In practice, the courts look at the underlying basis for the claim. Generally, alter ego claims based on the traditional alter ego allegations, such as inadequate capitalization, failure to maintain corporate separateness, diversion of corporate assets and co-mingling of assets, as a basis for piercing the corporate veil allege harm to the corporation, could be asserted by any creditor, belong to the bankruptcy estate and are called 'general" alter ego claims. *See Koch Refining v. Farmers Union Cent. Exch.*, 831 F.2d 1339, 1350 (7th Cir. 1987), cert. denied 485 U.S. 906, 108 S. Ct. 1077, 99 L.Ed.2d (1988) (court found that alter ego claims were general where the trustee's complaint specified facts and circumstances to support its assertion that the corporation itself was directly injured by misuse of the corporate form by the fiduciaries).

13

On the other hand, alter ego claims based on grounds other than traditional alter ego grounds, such as where the alter ego directly harms the claimant, could not be asserted by any other creditors, do not belong to the bankruptcy estate and are called "special" or "particularized" alter ego claims. *See Fisher v. Apostolou*, 155 F.3d 876, 883 (7th Cir. 1998) (court found that investor-creditors had independent, personal claims for fraud against the debtors' accomplices, even though their claims arose from the accomplices' misuse of the funds that they had invested in the debtor, because fraud inflicts a separate and distinct injury on its victims that is inflicted directly on those victims by its perpetrators).

Very few reported decisions address the distinction between generalized and particularized alter ego claims under California law. In fact, Ginger Root has located only four such cases: (i) *Variable-Parameter Fixture Development Corporation v. Morpheus Lights, Inc.*, 945 F.Supp. 603 (S.D.N.Y. 1996); (ii) *In re Folks*, 211 B.R. 378 (9th Cir. BAP 1997); (iii) *In re Davey Roofing, Inc.*, 167 B.R. 604 (Bankr. C.D. Cal. 1994); and (iv) *Stodd v. Goldberger*, 73 Cal.App.3d 827 (1977).

The case of *Variable-Parameter Fixture Development Corporation v. Morpheus Lights, Inc.*, 945 F.Supp. 603, 608 (S.D.N.Y. 1996), which held that an alter ego claim against the sole shareholder of a corporation was a particularized claim under California law and not property of the bankruptcy estate, is the most directly on point. In that case, the creditor alleged in its complaint that an alter ego of the debtor siphoned funds from the debtor, thereby harming the debtor. *Variable*, supra, 947 F. Supp. at 607. The creditor also alleged in its complaint that the alter ego of the debtor directly and actively participated in a patent infringement and was personally liable for damages arising from his tortious conduct. *Id.* Thus, the creditor was alleging both a general alter ego claim and a special or particularized alter ego claim.

14

The *Variable* defendants argued that since the creditor alleged that the alter ego of the debtor had withdrawn corporate funds from the debtor to satisfy a personal judgment against the alter ego, the alleged injury was only to the debtor and the alter ego claims were property of the debtor's bankruptcy estate (a general alter ego claim). *Id.* at 606. The district court disagreed, finding that the allegations of harm to the debtor did not preclude finding a particularized injury to the creditor where the creditor also alleged that the alter ego of the debtor directly and actively participated in willful infringement of the creditor's patent (a special alter ego claim). *Id.* at 607-608. As discussed below, like the *Variable* case, Ginger Root alleges in the complaints in both the State and Federal Court Actions that PJHB is responsible for the Contamination of the Property.

In the case of *In re Folks*, 211 B.R. 378 (9th Cir. BAP 1997), CBS was a creditor in the chapter 7 case of BYCA Television Distribution, Inc. ("BYCA"), but not a creditor in the bankruptcy case of Byron Allen Folks ("Folks"), *Id.* at 381. CBS filed a motion objecting to the discharge of Folks under 11 U.S.C. § 727(a)(2), (3), (4)(A), (4)(D), (5) and (6), on the grounds that Folks and his mother diverted corporate assets of BYCA for their own personal benefit. *Id.* at 382. Folks filed a motion for summary judgment, contending that CBS lacked standing to object to the discharge of Folks, because CBS was not a creditor of Folks, the alter ego claim was property of the BYCA bankruptcy estate, and the right to assert the claim vested exclusively in the BYCA trustee. *Id.*

The Bankruptcy Appellate Panel agreed, affirming the bankruptcy court's grant of summary judgment in favor of Folks. *Id.* at 388. The Bankruptcy Appellate Panel concluded that the claim was a general alter ego claim based on CBS's interrogatory responses, which identified traditional alter ego allegations as the basis for the claim (i.e, failure to observe corporate formalities, failure to hold shareholder meetings and use of BYCA's bank accounts and funds for personal

15

expenditures) and did not identify any separate basis for CBS's claim of alter ego. *Id.* at 387. Again, unlike the *Folks* case, Ginger Root alleges in the complaints in both the State and Federal Court Actions that PJHB, as well as APP, is responsible for the Contamination of the Property.

In the case of *In re Davey Roofing, Inc.*, 167 B.R. 604 (Bankr. C.D. Cal. 1994), the bankruptcy court acknowledged that California law recognizes two types of alter ego claims, "one where a creditor attempts to pierce the corporate veil and the other where the corporation pierces its own corporate veil". *Id.* at 608. The bankruptcy court then concluded that only the debtor or trustee has standing to assert the alter ego claim where injury to the corporation is alleged because alter ego claims are property of the estate. *Id.* In that case, the creditor alleged that the debtor's principal misappropriated for his own benefit assets belonging to the bankrupt corporation, to the detriment of the estate and all of Debtor's creditors and apparently did not allege any separate basis for its claim of alter ego. *Id.*

Finally, in *Stodd v. Goldberger*, 73 Cal.App.3d 827, the issue before the court was the kind of alter ego allegations alleged in a complaint. A bankruptcy trustee of a corporation sought to disregard the corporation's existence and establish the defendants' personal liability for all of the corporation's debts as alter egos. *Id.* at 832. The trial court granted the defendants' motion for judgment on the pleadings, giving the trustee leave to amend the complaint to allege that corporate assets were converted and  transferred to the injury of the corporation and its creditors. *Id.* The trustee declined to do so, asserting that a bankruptcy trustee of a corporation may maintain an action against corporate shareholder on an alter ego theory without allegations giving rise to a cause of action in the corporation. *Id.* The California Appellate Court affirmed the trial court, stating that in the absence of any allegation of injury to the corporation giving rise to a

16

right of action in the corporation against the defendants, the asserted alter ego cause of action belongs to each creditor individually. *Id.* at 833.

## C.   Ginger Root's Alter Ego Claims Are Special and Are Not Property of APP's Bankruptcy Estate.

Ginger Root alleges special, not general, alter ego claims in the complaints in both actions.   Ginger Root alleges that PJHB is responsible for the contamination that caused Ginger Root's injuries in both the State and Federal Court Actions.  Indeed, both the state and federal complaints allege that both APP *and* PJHB failed to properly handle, store, care for and/or use hazardous substances at the property and that both APP *and* PJHB participated in all of the actions that harmed Ginger Root.  *See* (AA, 235:15-24, 238:26-239:2, 240:15-19, 244:18-22, 257:18-25, 260:4-8, 261:16-17, 262:23-26, 263:18-22 [Walker Declaration, Ex. 1 (State Court Cross-Complaint, ¶¶ 33, 43, 53, 64)], Ex. 2 (Federal Court Complaint, ¶¶ 15, 16, 25, 35, 41, 46)].)  As a result of APP's and PJHB's actions the Property was contaminated with hazardous substances, resulting in ongoing injury and damages to Ginger Root.  (AA, 224:3-13, 241:15-243:7 [Walker Declaration, ¶ 11 and Ex. 1 (State Court Cross-Complaint, ¶ 58]; AA, 225:3-16, 257:18-25, 260:4-8, 261:16-17, 262:23-26, 263:10-17, 265:1-3, 265:17-20 [Walker Declaration, ¶ 16 and Ex. 2 (Federal Court Complaint, ¶¶ 15, 16, 25, 35, 41, 45, 52, 67)].)  No other creditor of APP can assert a claim against PJHB for these injuries.

While Ginger Root does allege traditional alter ego allegations in one paragraph in the complaint in the State Court Action, these allegations are the same "practice guide" allegations found in every complaint raising an alter ego allegation.  Moreover, these allegations are not found in the complaint in the Federal Court Action.  Finally, these allegations also are separate from the allegations of participation by PJHB in the Contamination of the Property

17

discussed above, the facts and declarations filed in support of Ginger Root's motion for summary judgment and in opposition to the Trustee's motion for summary judgment – all of which the Trustee did not dispute and admitted.

In addition, none of Ginger Root's specific allegations against PJHB could support an alter ego claim by APP to pierce its own corporate veil because there is no allegation of injury to APP giving it a right of action against PJHB. See *In re Davey Roofing, Inc.*, 167 B.R. at 385; *Stodd v. Goldberger*, 73 Cal.App.3d 827, 833 (1977). Accordingly, APP's bankruptcy estate has no interest in these alter ego claims and Ginger Root is the only party able to assert them. *In re Folks*, 211 B.R. at 386-387 ("[T]rustees are prohibited from asserting personal claims on behalf of creditors where the estate has no interest in the claims.").

The case of *Koch Refining v. Farmers Union Cent. Exch.*, 831 F.2d 1339 (7th Cir. 1987), cert. denied 485 U.S. 906, 108 S. Ct. 1077, 99 L.Ed.2d (1988), on which the Bankruptcy Court relied, is not on point. (AA, 364:7-365:11.) In the *Koch* case, the court held that the bankruptcy trustee, not the claimants in a declaratory relief action, was the proper party to bring an alter ego action against the debtor's shareholders. *Id.* at 1340. The claimants were oil companies who were defendants in preference actions brought by the trustee. *Id.* The claimants filed an action for declaratory judgment that the debtor was an alter ego of its member-owners, alleging that (i) the member-owners were jointly and severally liable to the debtor's bankruptcy estate and its creditors due to the misuse of the debtor and its corporate form, and (ii) the claimants were entitled to recover from the member-owners for any preference liability due to the member-owners' manipulation of the debtor. *Id.* at 1349. These are clearly general alter ego claims and the court correctly found that the injury alleged was to the corporation directly and to the claimants only indirectly. *Id.* Therefore the general alter ego claims belonged to the estate.

18

In comparison, Ginger Root's alter ego claims are based on the actions of PJHB. Ginger Root alleges that PJHB actions caused the contamination of the Property in the complaints in both the State and Federal Court Actions. This injury is to Ginger Root directly and not to APP. Furthermore, while the complaint in the State Court Action contains the same boilerplate alter ego allegations found in virtually every state court complaint, it also contains allegations of direct liability against PJHB. As the *Variable* court held, the inclusion of such boilerplate allegations does preclude a finding of special alter ego claims where allegations of direct participation in the harm also are included in the complaint. *Variable,* supra at 607-608.

Thus, the Bankruptcy Court erred in finding that Ginger Root's injuries were general, not special, and property of APP's bankruptcy estate.

**D.    The Complaints Sufficiently Allege PJHB's Participation in the Contamination of the Property.**

At oral argument the Bankruptcy Court found that the complaints in the State and Federal Court Actions did not allege direct and active participation by PJHB in the contamination. (AA, 367:2-368:1.) This finding is not supported by the complaints in either action.

In the State Court Action regarding above ground contamination at the Property, Ginger Root makes the following allegations:

1.    Ginger Root was injured by APP's and PJHB's negligence in failing to properly handle propane fuels and other equipment and/or materials utilized in its business operations, such that volatile and flammable fluids and/or gasses were ignited, causing an explosion and fire to occur at the Property. (AA, 223:11-17, 223:19-21, 224:3-13, 240:15-19 [Walker Declaration, ¶¶ 4, 6, 11 and Ex. 1 (State Cross-Complaint, ¶ 53)].)

19

2.    As a result of APP's and PJHB's negligence (i) one of APP's employees on the Property was killed and two others were critically injured, (ii) hazardous materials were released on to the Property and adjacent property, (iii) portions of the Property were destroyed, and (iv) APP and PJHB contracted for clean-up at the Property, but failed to pay for the clean-up resulting in mechanic's liens being filed against the Property and lawsuit brought against Ginger Root. (AA, 273:8-10 [Lynch Declaration, ¶¶ 14-16]; AA, 240:20-241:14 [Walker Declaration, Ex. 1 (State Cross-Complaint, ¶¶ 54-57).)

In the Federal Court Action regarding the below ground contamination, Ginger Root makes the following allegations:

1.    Ginger Root was injured by APP's and PJHB's actions resulting in the release of hazardous substances to soil and/or groundwater at the Property.    AA, 224:16-21, 224:23-26, 225:2-16 and 257:20-25 [Walker Declaration, ¶¶ 13, 15, 17 and Ex. 2 (Federal Complaint, ¶ 16)].)

2.    APP and PJHB engaged in the business of manufacturing, assembling, packaging, mixing, distributing, storing and warehousing of paint, paint supplies, aerosol, and related materials on the Property.    AA, 263:5-9 [Walker Declaration, Ex. 2 (Federal Complaint, ¶ 44)].)

3.    At various times during their operations on the Property, and continuing throughout 2005, APP and PJHB stored large quantities of chemical liquids, gasses, and other materials hazardous to human health and the environment (including but not limited to materials deemed to be "hazardous substances" as defined by CERCLA in tanks on the Property for use in their business operations. AA, 263:10-17 [Walker Declaration, Ex. 1 (Federal Complaint, ¶ 45); AA, 272:9-11 [Lynch Declaration, ¶ 9].)

4.    APP and PJHB failed to properly handle, store, care for, and/or use certain of the hazardous substances on the Property, which resulted in large

20

quantities of said hazardous substances leaking from storage tanks and other services owned and/or utilized by said parties into the soil and/or groundwater on and under the Property, resulting in the Contamination. (AA, 263:18-22 [Walker Declaration, Ex. 2 (Federal Complaint, ¶ 46)]; AA, 272:12-13 [Lynch Declaration, ¶ 10].)

       5.    As a result of the above-described leakage, said hazardous substances migrated throughout various subsurface areas under the Property, continue to migrate throughout the subsurface areas of the Property and to subsurface areas outside the Property and that such migration is continuous, ongoing, and is presently occurring at and under the Property. (AA, 272:14-21 [Lynch Declaration, ¶ 11].)

      Notwithstanding these allegations that PJHB participated in the contamination with APP, the Bankruptcy Court found that "there is nothing in here [the State Court Action] that alleges that PJHB was operating on the property independently, for its own purpose, other than as the alter ego of APP". (AA, 361:20-23.) This finding not supported by the allegations in the complaint in the State Court Action, as discussed above. Moreover, to the extent that PJHB was operating independently for its own purpose, Ginger Root has a direct claim again PJHB. In fact, Ginger Root has asserted direct claims against PJHB in both actions.

      Finally, the Bankruptcy Court's focus on the boilerplate alter ego allegations in the complaint in the State Court Action was misplaced. (AA, 366:20-21) In this case, as in the *Variable* case, Ginger Root's boilerplate alter ego allegations in the State Court Action should not preclude a finding of particularized injury to Ginger Root where Ginger Root also alleges PJHB's participation the actions that injured Ginger Root. *Variable,* supra at 607-608. Furthermore, these boilerplate alter ego

21

allegations are not in the Federal Court Action and could not be a basis for finding that the allegations of alter ego in the Federal Court Action are general not special.

**E.     The Bankruptcy Court Misconstrued the Function of the Complaints.**

The Bankruptcy Court's focus on the allegations in the complaints ignores the limited purpose of a complaint, which is to notify the defendants of the claims against them, not to prove the plaintiff's case. In California, the complaint is required to contain "a statement of the facts constituting the cause of action in ordinary and concise language". Cal. Civ. Proc. Code § 425.10. The facts to be pleaded are ultimate facts, that is, those facts upon which liability depends. *Doe v. City of Los Angeles*, 42 Cal.4th 531, 550 (2007). "It is both improper and insufficient for a plaintiff to simply plead the evidence by which he hopes to prove such ultimate facts". *Careau & Co. v. Security Pac. Business Credit, Inc.*, 222 Cal.App.3d 1371, 1390 (1990). Moreover, the plaintiff is required to plead only those facts necessary to "acquaint a defendant with the nature, source and extent of his claims". *Doe v. City of Los Angeles, supra,* 42 Cal.4th at 550.

In federal court, the pleading requirements are even more limited. The Federal Rules of Civil Procedure require that all allegations be short and plain. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 998 (2002). Rule 8(a) of the Federal Rules of Civil Procedure requires that the pleading contain a short and plain statement of the grounds for jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Fact pleading is not required. Indeed, a complaint in federal court is not required to allege all, or even any, of the facts entailed by the claim. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Furthermore, the precise nature of the claim asserted need not be specified as long as the facts alleged put the defendant on notice of the claim. *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990).

The complaint in the State Court Action contains basic alter ego allegations sufficient to acquaint the defendants with the nature and extent of the claim, as required by California law. (AA, 230:9-231:7 [Walker Declaration, Ex. 1 (State Cross-Complaint, ¶ 10)].) Similarly, the alter ego allegation in the complaint in the Federal Court Action merely apprised the defendants of the alter ego claim without elaborating on the underlying facts supporting the claim. (AA, 257:16-17 [Walker Declaration, Ex. 2 (Federal Complaint, ¶ 14)].) The Bankruptcy Court's reliance on these allegations without regard to the evidence or even to the nature of Ginger Root's claims asserted elsewhere in the complaints was misplaced.

## VII.

## CONCLUSION

Ginger Root sued PJHB both directly and as the alter ego of APP for torts (negligence and nuisance) and statutory cost recovery claims (CERCLA) on the grounds that PJHB's actions injured Ginger Root, not APP or any of its creditors. Ginger Root was injured in a way that other creditors of APP were not by the release of hazardous contaminants at the Property owned by Ginger Root and by the explosion and fire at its Property as a result of PJHB's actions. Ginger Roots alter ego claims against PJHB are not general alter ego claims. They are special alter ego claims based upon the actions of PJHB. The Bankruptcy Court erred as a matter of law in finding that Ginger Root's alter ego claims were generalized and property of APP's bankruptcy estate. Therefore, Ginger Root requests that the Court reverse the Judgment in favor of the Trustee and remand the case to the Bankruptcy Court with instructions to enter summary judgment in favor of Ginger Root.

DATED:  September 1, 2009        Respectfully submitted,

COX, CASTLE & NICHOLSON LLP


By: _____
        Susan S. Davis
Attorneys for Appellant Ginger Root Office
Associates, LLC

24

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. 32(a)(7)(c) AND NINTH CIRCUIT RULE 32-1
## FOR CASE NO. CV09-C5C45-MMM

Pursuant to Fed. R. App. 32(a)(7)(c) and Ninth Circuit Rule 32-1, I certify that the attached Appellant's brief is proportionately spaced, has a typeface of 14 points or more and contains 8,281 words.

DATED:  September 1, 2009          COX, CASTLE & NICHOLSON LLP

                                   By: _____
                                          Susan S. Davis
                                   Attorneys for Ginger Root Office Associates,
                                   LLC

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6 and Central District Local Rule 83-1.3.1, Defendant-Appellant Ginger Root Office Associates, LLC is aware of the following related cases pending in this Court:

*Ginger Root Office Associates, LLC v. Advanced Packaging & Products Co., et al.*, Case No. CV07-05568-MMM (CTx)

*Ginger Root Office Associates, LLC v. David Y. Farmer*, Case No. CV-09-5748-GW

<u>PROOF OF SERVICE AND CERTIFICATION</u>

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, 28th Floor, Los Angeles, California  90067-3284.

☐ (FOR MESSENGER) My business address is Nationwide Legal, 316 West 2nd Street, Suite 705, Los Angeles, CA 90012.

On **September 1, 2009**, I served the foregoing document(s) described as **BRIEF OF APPELLANT** on ALL INTERESTED PARTIES in this action by placing ☐ the original ☒ a true copy thereof enclosed in a sealed envelope addressed as follows:

### PLEASE SEE ATTACHED SERVICE LIST.

On the above date:

☐ (BY ☐ U.S. MAIL/BY ☐ EXPRESS MAIL) The sealed envelope with postage thereon fully prepaid was placed for collection and mailing following ordinary business practices.  I am aware that on motion of the party served, service is presumed invalid if the postage cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing set forth in this declaration.  I am readily familiar with Cox, Castle & Nicholson LLP's practice for collection and processing of documents for mailing with the United States Postal Service and that the documents are deposited with the United States Postal Service the same day as the day of collection in the ordinary course of business.

☒ (BY FEDERAL EXPRESS OR OTHER OVERNIGHT SERVICE) I deposited the sealed envelope in a box or other facility regularly maintained by the express service carrier or delivered the sealed envelope to an authorized carrier or driver authorized by the express carrier to receive documents.

☐ (BY FACSIMILE TRANSMISSION) On December __, 2008, at _____ a.m./p.m. at Los Angeles, California, I served the above-referenced document on the above-stated addressee by facsimile transmission pursuant to Rule 2.306 of the California Rules of Court.  The telephone number of the sending facsimile machine was (___) ___-____, and the telephone number of the receiving facsimile number was (___) ___-____.  A transmission report was properly issued by the sending facsimile machine, and the transmission was reported as complete and without error.  Copies of the facsimile transmission cover sheet and the transmission report are attached to this proof of service.

☐ (BY E-MAIL OR ELECTRONIC TRANSMISSION) - On _____, at _____ a.m./p.m. at Los Angeles, California, I served the above-referenced document by electronic mail to the e-mail address of the addressee(s) pursuant to Rule 2.260 of the California Rules of Court.  The transmission was complete and without error and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ (BY PERSONAL DELIVERY) By causing a true copy of the within document(s) to be personally hand-delivered to the office(s) of the addressee(s) set forth above, on the date set forth above.

☐ (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.

☒ (FEDERAL ONLY) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I hereby certify that the above document was printed on recycled paper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **September 1, 2009**, at Los Angeles, California.

Beverly Mikell
Beverly Mikell

**SERVICE LIST**
*Ginger Root Office Associates, LLC v. David Y. Farmer, Chapter 7 Trustee*
District Court Case Number CV 09-05045-MMM

<u>U.S. Trustee</u>
United States Trustee
Northern Division
1415 State Street
Santa Barbara, CA  93101-2511

<u>Attorney for Appellee</u>
Jonathan G. Gura, Esq.
Michaelson, Susi & Michaelson
Seven West Figueroa Street, Second Floor
Santa Barbara, CA 93101-3191

United States District Court
U.S. Courthouse, Room G-8
312 North Spring Street
Los Angeles, CA  90012-4701

58611\1409332v3